UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH A. RUSHING, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:19-cv-04494-JPH-DML |
| JOHN NWANNUNU, et al. | ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

### I. Introduction

Joseph A. Rushing was an inmate at New Castle Correctional Facility, where he was under the medical care of Dr. John Nwannunu, Dr. E. Falconer, and Dr. M. Karneziun. Mr. Rushing alleges that these doctors were deliberately indifferent to his foot fungus and ingrown toenail. All parties have moved for summary judgment. Because no reasonable jury could find based on the designated evidence that the defendants were deliberately indifferent to a serious medical need, the defendants' motions for summary judgment are **GRANTED** and Mr. Rushing's motion for summary judgment is **DENIED**.

### II. Summary Judgment Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798

1

F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. Williams v. Brooks, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court may rely only on admissible evidence. *Cairel v. Alderen*, 821 F.3d 823, 830 (7th Cir. 2016). Inadmissible evidence must be disregarded. *Id.*

The Court considers assertions in the parties' statements of facts that are properly supported by citation to admissible evidence. S.D. Ind. L.R. 56-1(e). If a non-movant fails to properly rebut assertions of fact made in the motion for summary judgment, those facts are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts); *Robinson v. Waterman,* 1 F.4th 480, 483 (7th Cir. 2021) (district court may apply local rules to deem facts unopposed on summary judgment). Additionally, the Court has no duty to search or consider any part of the record not specifically cited in the parties' statements of facts. S.D. Ind. L.R. 56-1(h).

### III. Material Facts Before the Court

#### A. Relevant Timeframe

Mr. Rushing arrived at New Castle Correctional Facility on or about May 19, 2019. *See* dkt. 78-1 (medical intake records). All events relevant to Mr. Rushing's claims occurred between then and November 7, 2019, when Mr. Rushing filed his complaint.[1] Dkt. 1. The parties' summary judgment briefing is limited to the time between these two dates. *See generally* dkt. 73; dkt. 77; dkt. 96; dkt. 97. This Order is limited to the same timeframe.

#### B. Dr. Nwannunu

Mr. Rushing filled out a healthcare request form dated May 21, 2019, asking "May I please have someone to look at my big toe? It is getting worse, swelling, drainage, some bleeding and very painful. This ingrown toenail is unbearable." Dkt. 97-1 at 4. Unlike all the other full-page healthcare request forms submitted by Mr. Rushing, this one does not include any writing or notation to indicate that it was received by prison medical staff. *See id.* at 3–21.

Mr. Rushing saw a nurse on June 5, 2019, in response to his complaint: "Right baby toe is causing me excruciating pain and the pain is spreading to my

---

[1] There is evidence in the record that Mr. Rushing's conditions persisted after the complaint was filed on November 7, 2019. But Mr. Rushing has not moved for leave to amend or supplement his complaint to allege that the defendants were deliberately indifferent based on events that occurred after the complaint was filed. *See* Fed. R. Civ. P. 15(d).

other toes." Dkt. 78-1 at 17. The nurse examined him and reported "4th and 5th toe on Right foot swollen, red, painful." *Id.* at 18.

Dr. Nwannunu examined Mr. Rushing on June 10, 2019, and diagnosed Mr. Rushing with chronic athlete's foot and a secondary bacterial infection. *Id.* at 20–21. Mr. Rushing reported at this visit that antifungal cream had been ineffective. *Id.* at 20. Dr. Nwannunu prescribed an oral antibiotic and an oral antifungal medication. Dkt. 78-3 at 2, ¶ 5.

Mr. Rushing submitted a healthcare request form on July 17, 2019, asserting: "[M]y right baby toe is still infected with pain, my right big toe is infected with much pain, and my left baby toe is infected with a little pain now." Dkt. 97-1 at 17. A nurse responded the next day, "Toe infection—same issue as seen by Dr. John Nwannunu on June 10, 2019." *Id.* The day after that, Dr. Nwannunu treated Mr. Rushing again. Dkt. 78-1 at 25. Dr. Nwannunu maintained the prescription for oral antifungal medication and added a prescription for an antifungal cream. Dkt. 78-3 at 2, ¶ 6.

### C. Dr. Kernizan

In August 2019, Mr. Rushing submitted several healthcare request forms reporting that his infection was persistent and that he had a painful ingrown toenail. Dkt. 97-1 at 25–27.

Dr. Kernizan treated Mr. Rushing on September 5, 2019. Dkt. 74-2. She examined Mr. Rushing's feet and diagnosed him with athlete's foot, a bacterial infection, and an ingrown toenail in his right great toe. Dkt. 74-1 at 2, ¶ 5. Noting that prior treatments had not worked, Dr. Kernizan prescribed an antifungal

4

powder and a new oral antibiotic. Dkt. 74-2 at 3. Dr. Kernizan did not feel comfortable removing Mr. Rushing's ingrown toenail, so she put in a request for an outside podiatrist visit. Dkt. 74-1 at 2, ¶ 5; dkt. 74-3. That request was apparently rejected, as Mr. Rushing was not sent to an outside podiatrist. *See* Dkt. 97-1 at 30.

### D. Dr. Falconer

Dr. Falconer treated Mr. Rushing on September 23, 2019. He prescribed a 12-week course of oral antifungal medication. Dkt. 74-4 at 2, ¶ 8. This was the same oral antifungal that Dr. Nwannunu had prescribed, but Dr. Falconer believed that the 12-week course would "ensure[] that the infection [was] completely eradicated." *Id.* ¶ 7.

Dr. Falconer also scheduled the removal of Mr. Rushing's ingrown portion of his toenail. *Id.* at 3, ¶ 9. Dr. Falconer removed only a portion of the toenail, not the whole thing, "to prevent future instances of an ingrown nail and limit the potential for infection." *Id.* ¶ 10. After the removal, Dr. Falconer prescribed two prophylactic antibiotics to minimize the risk of infection. *Id.* ¶ 9. These antibiotics may be used in concert with the oral antifungal medication prescribed by Dr. Falconer. *Id.* at 2, ¶ 7.

### III. Discussion

To prevail on his Eighth Amendment deliberate indifference claims, Mr. Rushing must show (1) that he suffered from an objectively serious medical condition and (2) that the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*,

511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019). "A negligent exercise of medical judgment is not enough to show deliberate indifference. Plaintiff must show a failure to exercise medical judgment at all." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 660 (7th Cir. 2021).

### A. Dr. Nwannunu

Mr. Rushing asserts that "Dr. Nwannunu misled [him] to believe he had athlete's foot, when indeed it's some type of fungus that Dr. Nwannunu has never seen." Dkt. 97 at 2. He argues that Dr. Nwannunu should have sought a second opinion. But Mr. Rushing has not designated evidence from which a jury could find that Dr. Nwannunu misdiagnosed Mr. Rushing, let alone that any misdiagnosis was a result of deliberate indifference. The designated evidence shows that Dr. Nwannunu examined Mr. Rushing's feet and listened to his complaints. He then made a reasoned diagnosis of athlete's foot and a secondary bacterial infection, and then prescribed an oral antibiotic and oral antifungal medication. Dkt. 78-1 at 20–21; dkt. 78-3 at 2, ¶ 5. When the oral medications did not resolve the issue within a few weeks, Dr. Nwannunu added a topical antifungal cream. Dkt. 78-3 at 2, ¶ 6. Because the designated evidence would not allow a reasonable jury to find that Dr. Nwannunu was deliberately indifferent to Mr. Rushing's athlete's foot,[2] Dr. Nwannunu is entitled to summary judgment.

---

[2] In his motion for summary judgment, Mr. Rushing asserts that he first notified medical staff of his ingrown toenail on or about August 5, 2019. Dkt. 95 at 3, ¶ 3. In his response to Dr. Nwannunu's motion for summary judgment, Mr. Rushing asserts that he told

### B. Dr. Kernizan

Mr. Rushing does not explain how he believes Dr. Kernizan was deliberately indifferent. In his response to her motion for summary judgment, he points to her declaration and asks, "[W]as Marie Kernizan even a physician licensed to practice medicine in the State of Indiana?" Dkt. 96 at 2. But there is no designated evidence showing that she was not a licensed physician when she treated Mr. Rushing. Indeed, she testifies that the statements in her declaration are "based on upon [her] personal knowledge, experience, and training as a licensed physician . . . ." Dkt. 74-1 at 1, ¶ 1. Moreover, Dr. Kernizan exercised reasonable medical judgment. She referred him to an outside podiatrist to have his ingrown toenail removed. Dkt. 74-1 at 2, ¶ 5; dkt. 74-3. And she prescribed two new medications to treat his athlete's foot. Dkt. 74-2 at 3. No reasonable jury could find that this treatment constituted deliberate indifference, so Dr. Kernizan is entitled to summary judgment.

### C. Dr. Falconer

Mr. Rushing suggests that Dr. Falconer was deliberately indifferent for removing only the ingrown portion of the toenail on his right great toe. Dkt. 96 at 1 ("Dr. Falconer performed [a partial] operation to remove his ingrown toenail but did not remove the toenail to the quick of the sensitive area to stop this matter from reflaring up again."). But the designated evidence shows that

---

Dr. Nwannunu about the ingrown toenail on or about June 10, 2019. Dkt. 97 at 3. But he has not designated any evidence to support this assertion. The Court will not search the record for evidence of this or any other assertion. *See* S.D. Ind. L.R. 56-1(h).

Dr. Falconer exercised his medical judgment in removing only the ingrown portion of Mr. Rushing's toenail. Dkt. 74-4 at 3, ¶ 10 (removing the whole toenail "increases the likelihood that the nail will grow back misshapen, thus increasing the risk of an ingrown toenail in the future").

Mr. Rushing also argues that Dr. Falconer was deliberately indifferent for not conducting a biopsy of his foot fungus. But the designated evidence shows that Dr. Falconer exercised his medical judgment by prescribing a 12-week course of oral antifungal medication. Dkt. 74-4 at 2, ¶ 8 ("For fungal toenail infections, the typical course of treatment consists of taking Terbinafine once per day for twelve weeks."); *id.* ¶ 7 ("[I]t is crucial that the patient take the entire course of the medication even if their symptoms improve after taking a portion of the doses."). And there is no designated evidence indicating that Mr. Rushing had previously completed a full 12-week course of this medication.

Because no reasonable jury could find from the designated evidence that Dr. Falconer failed to exercise reasonable medical judgment or was otherwise deliberately indifferent to Mr. Rushing's conditions, Dr. Falconer is entitled to summary judgment.

## IV.   Other Pending Motions

Because defendants are entitled to summary judgment, Mr. Rushing's motion for summary judgment, dkt. [95], is **DENIED**. The defendants' motion to strike the motion for summary judgment, dkt. [99], is **DENIED** as moot.

Mr. Rushing's motion requesting case status, dkt. [119], is **GRANTED** to the extent that this Order resolves all claims in this case.

Mr. Rushing's most recent motions for appointment of counsel, dkts. [111] and [118], are **DENIED.** Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655–56.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682; *see*

*also Thomas v. Anderson*, 912 F.3d 971, 978 (7th Cir. 2019) (because plaintiff did not show that he tried to obtain counsel on his own or that he was precluded from doing so, the judge's denial of these requests was not an abuse of discretion).

Mr. Rushing asserts that he has "tried to make contact with a few attorneys," but he cannot contact them because he does not have stamps. Dkt. 111 at 2. He previously attempted to contact several attorneys and legal service providers. Dkt. 34 at 2. The Court finds that he has made a reasonable effort to recruit counsel on his own before seeking the Court's assistance.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Id.* (quoting *Pruitt*, 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt*, 503 F.3d at 655).

Mr. Rushing reports difficulty reading and writing English, and he dropped out of school in sixth grade. But he has litigated this case through summary judgment, and he demonstrated that he was able to make coherent legal arguments and marshal evidence to support them. *See, e.g.*, dkt. 97 (response

10

to Dr. Nwannunu's motion for summary judgment) and dkt. 97-1 (supporting exhibits). He has not shown that his challenges are meaningfully different from those faced by other *pro se* inmate litigants. His motions for assistance with recruiting counsel, dkts. [111] and [118], are **DENIED**.

## V.     Conclusion

Mr. Rushing's motion for summary judgment, dkt. [95], and motions for assistance with recruiting counsel, dkts. [111] and [118], are **DENIED**. His motion requesting case status, dkt. [119], is **GRANTED**.

The defendants' motion to strike Mr. Rushing's motion for summary judgment, dkt. [99], is **DENIED**. The defendants' motions for summary judgment, dkts. [72] and [76], are **GRANTED**.

All claims in this action have been resolved. Final judgment shall now enter.

**SO ORDERED.**

Date: 3/21/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOSEPH A. RUSHING
895997
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Michael Roth
EICHHORN & EICHHORN LLP (Indianapolis)
mroth@eichhorn-law.com

Sarah Jean Shores-Scisney
KATZ  KORIN CUNNINGHAM, P.C.
sshores@kkclegal.com